Philip R. Sellinger
United States Attorney
By: SARAH DEVLIN
Assistant United States Attorney
970 Broad Street, Suite 700
Newark, New Jersey 07102
Tel: 973.645.2700
Sarah.Devlin3@usdoj.gov

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | Hon. |
| Plaintiff, | : | Civil Action No. 23- |
| v. | : | |
| **82,656 RED BULL ENERGY DRINKS,** | : | **VERIFIED COMPLAINT FOR FORFEITURE *IN REM*** |
| | : | |
| Defendants *in rem* | : | |

Plaintiff, the United States of America, by its attorney, Philip R. Sellinger, United States Attorney for the District of New Jersey, for its verified complaint ("Complaint") alleges, upon information and belief, as follows:

### I.    NATURE OF THE ACTION

1. This is an action to forfeit and condemn to the use and benefit of the United States of America 82,656 Red Bull energy drinks, which were seized in Newark, New Jersey on September 23, 2022, by U.S. Customs and Border Protection pursuant to a seizure and forfeiture order issued by the International Trade Commission (collectively, "Defendants in rem").

2. The Defendants in rem are subject to seizure and forfeiture to the United States of America, pursuant to 19 U.S.C. § 1595(c)(2)(C) as merchandise

imported into the United States of America in violation of 19 U.S.C. § 1337 and 19 C.F.R. § 12.39.

## II.     JURISDICTION AND VENUE

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1345 and 1355(a).

4. Venue is proper pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts and omissions giving rise to the forfeiture occurred in the District of New Jersey and pursuant to 28 U.S.C. § 1395(b), because the Defendants in rem were seized in the District of New Jersey.

## III.    FEDERAL STATUTORY AND REGULATORY BACKGROUND

5. 19 U.S.C. § 1595a prohibits the introduction of any article into the United States contrary to law, including any violation of trademark and copyright laws, and authorizes U.S. Customs and Border Protection (CBP) to seize and forfeit such merchandise.  *See* 19 U.S.C. § 1595a(c)(2)(C).  The attempted import of the Defendants in rem violated 19 U.S.C. § 1337 and 19 C.F.R. § 12.39, which are outlined below.

6. The Lanham Act of 1946 ("Lanham Act") prohibits the unauthorized commercial use of a trademark.  Congress intended the Lanham Act to protect the trademark owner against trademark name infringement.  The Lanham Act created a uniform national system for trademark registration housed in the U.S. Patent and Trademark Office (USPTO).  15 U.S.C. § 1124 is the section of the Lanham Act prohibiting the importation of goods that infringe a United States trademark.

7. Section 337 of the Tariff Act of 1930 ("Tariff Act") was enacted to protect the public interest from unfair trade practices in international commerce. *See* 19 U.S.C. § 1337. To that end, it prohibits "[t]he importation into the United States" of, among other things, "articles that infringe a valid and enforceable . . . United States copyright" and "articles that infringe a valid and enforceable United States trademark." *Id.* § 1337(a)(1)(B)(i), (C).

8. The International Trade Commission (ITC) administers Section 337 of the Tariff Act, which tasks the ITC with investigating and making determinations as to violations of Section 337, including trademark and copyright infringement. *See id.* § 1337(b)(1), (c). Following a determination of a Section 337 violation, the ITC has broad remedial authority to issue exclusion orders barring "the articles concerned" from entry into the United States. *Id.* § 1337(d)(1), (e)(1).

9. CBP, by delegation of the Secretary of Treasury, enforces orders issued by the ITC. The ITC must notify CBP of any exclusion order that it issues, and CBP "shall" accordingly "refuse such entry." *Id.* § 1337(d)(1), (e)(1).

10. Additionally, Section 337 authorizes the ITC to issue an order directing CBP to seize and forfeit the goods to the United States if the importer or a related business entity previously attempted to import the articles into the United States; the article was previously denied entry into the United States due to an exclusion order; and, upon such previous denial of entry, CBP provided the importer with written notice of the exclusion order and that seizure and forfeiture would result from any further attempt to import the

3

article into the United States.  *See id.* § 1337(i).  Like an exclusion order, ITC must notify CBP of any seizure and forfeiture order that it issues, and CBP "shall" accordingly "enforce such order" in accordance with the provisions of Section 337.  *Id.* § 1337(i)(2).

11. 19 C.F.R. § 12.39 sets forth the procedure for a trademark owner to obtain an order of exclusion and/or a seizure and forfeiture order from the ITC to address trademark and copyright infringement on goods imported into the United States.

## IV.  FACTS

i. *Red Bull Trademarks and Red Bull's Proceedings Before the International Trade Commission*

12. Red Bull GmbH, the trademark holder of Red Bull products, registered its trademarks with the USPTO and its copyright with the United States Copyright office.  Red Bull GmbH also recorded its trademarks and copyright with CBP in order to obtain protection against trademark infringement.

13. CBP maintains an electronic database of trademarks and copyrights that have been registered with the USPTO and the United States Copyright office.  When the trademarks and copyrights are also recorded with CBP, they are assigned an eRecordation number.  The eRecordation numbers applicable for Red Bull energy drinks are TMK 09-00328, TMK 10-01273, and COP 14-00016.

14. On October 1, 2010, upon application by Red Bull GmbH, the ITC determined that a general exclusion order barring infringing Red Bull energy

drink products from entry into United States commerce was necessary due to a pattern of violations of 19 U.S.C. § 1337.  Accordingly, the ITC issued an Exclusion Order ("EO") dated October 1, 2010, to prevent the entry of infringing Red Bull energy drink products into the United States.

15. Specifically, the EO dated October 1, 2010 prohibited the unlicensed importation of energy drink products that (i) infringe United States Trademark Registration Numbers 3,092,197 (RED BULL); 2,946,045 (DOUBLE BULL DESIGN); 2,994,429 (Red Bull Sugar free Background Design); 3,479,607 (Composite Front Label Design) or any marks confusingly similar thereto or that are otherwise misleading as to source, origin, or sponsorship, or (ii) bear United States Copyright Registration No. VA0001410959 or a design substantially similar thereto.

16. Despite the existence of the EO dated October 1, 2010, DASP Group LLC attempted to import infringing Red Bull energy drink products into the United States.  As a result, on March 5, 2019, the ITC issued a Seizure and Forfeiture Order ("SFO") (attached hereto as Exhibit A) which ordered that: "Energy Drink Products that are imported in violation of the corrected general exclusion order issued in the above-captioned investigation are to be seized and forfeited to the United States, if imported by the following firm: DASP Group LLC, 760 Oak Glen Road, Howell, New Jersey 07731, *or any affiliated companies, parents, subsidiaries, or other related business entities, or any of their successors or assigns*" (emphasis added).

17. According to the New Jersey Department of the Treasury, Division of Revenue and Enterprise Services, Howell Imports LLC was incorporated ten days after the International Trade Commission's March 5, 2019 seizure and forfeiture order listing DASP Group LLC.

  ii. *The Defendants in Rem*

18. On July 18, 2022, a CBP officer noted that a shipment of Red Bull energy drink products produced in South Africa was destined for entry into the United States ("Subject Shipment"). The notation indicated that CBP officers in the United States should detain the Subject Shipment and conduct a full examination of all shipments from the designated producer in South Africa who was known to export infringing Red Bull energy drink products to the United States.

19. On or about August 12, 2022, CBP detained the Subject Shipment.

20. On September 23, 2022, CBP seized the Subject Shipment for forfeiture to the United States. On November 15, 2022, CBP issued a Notice of Seizure to Howell Imports, LLC.

  iii. *Despite the ITC's Order Regarding DASP's Importation of Infringing Red Bull Products, David Pinter Used Howell Imports LLC to Continue to Import Infringing Red Bull Products into the United States in Contravention of the ITC's Orders*

21. Howell Imports, LLC (hereinafter "Howell") was the importer of the Subject Shipment. Howell and DASP Group LLC, which is specifically listed in the March 5, 2019 SFO, not only share the same principal and business address, but also both import energy drinks to the United States.

22. The SFO lists DASP's business address as 760 Oak Glen Road, Howell, New Jersey 07731.

23. DASP Group LLC, d/b/a Savewize Premium Closeouts appeared as a third-party defendant in a 2018 case filed in the United States District Court for the Eastern District of New York. *See Matkal LLC v. VG Rush Corp.*, No. 18-CV-2833(SJF)(AKT), 2019 WL 1748601 (E.D.N.Y. Apr. 18, 2019). The initial Rule 26 disclosure that DASP Group LLC filed in *Matkal LLC v. VG Rush Corp.*, lists David Pinter as the CEO of the company. Doc. No. 38.

24. Furthermore, the website for Savewize lists David Pinter as the CEO of the company, and lists 760 Oak Glen Road, Howell, New Jersey as the Savewize company address.

25. As stated above, the SFO mandated that CBP seize and forfeit energy drink products imported in violation of the corrected general exclusion order by DASP or any affiliated companies, parents, subsidiaries, or other related business entities, or any of their successors or assigns.

26. Howell is an affiliated company and/or related business entity of DASP.

27. On November 15, 2022, CBP sent notice of seizure of the property to Howell Imports LLC, at 4 Champlain Court, Lakewood, New Jersey (Doc. No. 2-1 at 5), an address associated with David Pinter. As discussed in paragraph 33, Howell filed a claim in response to the notice.

28. According to information from Panjiva.com,[1] 4 Champlain Court, Lakewood, NJ and 760 Oak Glen Road, Howell, New Jersey—DASP's address—are both listed as the "consignee address" for shipments in which Howell was listed as the consignee in 2022.  Information from Panjiva.com shows that in December 2022, Howell Imports LLC, with a consignee address of 4 Champlain Court, imported energy drinks into the United States.

29. David Pinter is named in written correspondence from Howell to CBP, as a September 14, 2022 letter from Howell's counsel to CBP regarding the seized property named David Pinter in the "carbon copy" line of the letter.

30. Furthermore, New Jersey property records show that from March 27, 2012 until February 2, 2022, David Pinter owned 4 Champlain Court in Lakewood, New Jersey, a residential property.  On February 2, 2022, David Pinter sold 4 Champlain Court to Spine Group LLC for $1 despite having purchased the property in 2012 for $230,000.

31. According to Google Maps, the driving distance between 760 Oak Glen Road—DASP's address—and 4 Champlain Court is two miles.

32. In addition to having the same principal and business addresses, Howell and DASP conduct the same business activities.  As noted in the SFO, DASP imported energy drink products into the United States.  In the instant case, Howell attempted to import energy drink products into the United States. Data from Panjiva.com shows that in addition to the instant shipment of

---

[1] Panjiva.com is a business that serves the "global trade community" by "aggregat[ing] and analyzing "data," "including customs data," from the United States.  *See Panjiva, Inc. v. United States Customs & Border Prot.*, 975 F.3d 171, 175 (2d Cir. 2020).

82,656 Red Bull Energy Drinks, Howell imported energy drinks from South Africa into the United States in December 2022.

*iv. Howell's Claim*

33.     By letter dated December 21, 2022, Howell, through counsel, submitted an administrative claim to CBP requesting that the seizure of the Subject Shipment be referred to the United States Attorney's Office for judicial forfeiture.

34.     In its administrative claim, Howell asserted that it is not subject to the March 25, 2019 SFO.  In addition, Howell asserted that the conditions for a seizure and forfeiture order against Howell do not exist, claiming that CBP never denied any previous Howell shipment entry into the United States or provided notice to Howell that seizure and forfeiture would result from any further attempt to import the product or like products into the United States.

## V.     CLAIM FOR FORFEITURE

35.     The allegations contained in paragraphs 1 through 34 of this Complaint are incorporated herein and made part hereof.

36.     Based on the foregoing facts, there is sufficient evidence to believe that the Defendants in rem are subject to forfeiture to the United States of America, pursuant to 19 U.S.C. § 1595a(c)(2)(C), as merchandise imported into the United States of America in violation of 19 U.S.C. § 1337 and 19 C.F.R. § 12.39.

## VI.     CONCLUSION

WHEREFORE, the United States of America requests that the Clerk of the Court issue a warrant for the arrest and seizure of the Defendants in rem; that notice of this action be given to all persons who reasonably appear to be potential claimants to the property; that the Defendants in rem be forfeited and condemned to the United States of America; that the plaintiff be awarded its costs and disbursements in this action; and that the Court grant such other and further relief it deems proper and just.

Dated: August 4, 2023

                PHILIP R. SELLINGER
                United States Attorney

                *s/ Sarah Devlin*

                By: SARAH DEVLIN
                Assistant United States Attorney

## **VERIFICATION**

I, Bonnie Manuel, hereby verify and declare under penalty of perjury that I am an Import Specialist in the U.S. Customs and Border Protection (CBP) Office of Field Operations, and in that capacity have responsibility for this action; that I have read the foregoing Verified Complaint and know the contents thereof; and that the same is true to the best of my own knowledge, information, and belief.

The sources of my knowledge and the grounds of my belief include the official files and records of CBP and other law enforcement agencies; information obtained directly by me; and information supplied to me from and by other law enforcement officials, during an investigation of alleged violations of 19 U.S.C. § 1595a.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct, pursuant to 28 U.S.C. § 1746.

Dated this 4th day of August 2023

*s/ Bonnie Manuel*
Bonnie Manuel
Import Specialist
U.S. Customs and Border Protection